**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angelo Mesa, et al.,<br><br>            Plaintiffs,<br><br>v.<br><br>Louis DeJoy, et al.,<br><br>            Defendants. | No. CV-24-00965-PHX-MTL<br><br>**ORDER** |

Pending before the Court is Defendant U.S. Postmaster General Louis DeJoy's Motion to Dismiss (Doc. 24) and Motion to Strike Plaintiffs Angelo Mesa and Mychelle Moxley's Sur-Reply (Doc. 38). The Motion to Dismiss is fully briefed. (Docs. 33, 36.) For the following reasons, Defendant's Motion to Dismiss will be granted in part and denied in part, and the Motion to Strike will be granted.[1]

**I.     BACKGROUND**

The following summary is taken from the allegations in Plaintiffs' First Amended Complaint ("FAC") (Doc. 5) and documents properly subject to judicial notice.[2] The Court

---

[1] Although not requested, the Court finds that oral argument will not aid the Court in resolution of the pending motions. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* Fed. R. Civ. P. 78(b); LRCiv 7.2(f).

[2] Defendant seeks judicial notice of Plaintiffs' Equal Employment Opportunity ("EEO") Complaints (Docs. 24-1, 24-3) and EEO Dispute Resolution Specialist's Inquiry Reports (Docs. 24-2, 24-4). The Court will grant the request because Plaintiffs do not dispute the authenticity of the documents, and the documents are properly subject to judicial notice. *Lacayo v. Donahoe*, No. 14-CV-04077-JSC, 2015 WL 993448, at *9 (N.D. Cal. Mar. 4, 2015) ("In the context of employment discrimination cases in particular, it is well established that courts may consider the administrative record of a plaintiff's claims before the EEOC as judicially noticeable matters of public record.").

accepts the allegations in the FAC as true for the purposes of assessing the pending motion to dismiss. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### A. Factual Background

Plaintiffs Mychelle Moxley and Angelo Mesa are employees and union stewards for the United States Postal Service ("USPS") at the Arcadia Post Office. (Doc. 5 ¶¶ 13, 15, 18.) In their capacity as union stewards, they advocate for co-workers by attempting to reach informal dispute resolution with management. (*Id.* ¶¶ 20, 22.) Plaintiffs allege that their supervisors had several interactions with them and were aware of their work with the union. (*Id.* ¶¶ 31-32, 37-40, 56, 60-62, 70-72.)

Plaintiffs assert that many of their interactions with management were hostile. (*Id.* ¶ 62.) Specifically, they allege that supervisors made comments about not going above their head, (*Id.* ¶¶ 44-45), that they were not pleased with Plaintiffs' advocacy (*Id.* ¶ 61), that they had union employees in their pocket (*Id.* ¶¶ 84-85), and that stewards should "pick their battles" (*Id.* ¶ 86). Plaintiffs also allege that supervisors took actions hostile to union activities, including requiring employees provide advance notice on the alleged dispute in order to receive time to meet with a union steward (*Id.* ¶ 71), denying stewards time to meet on the clock (*Id.* ¶ 42), moving stewards to areas without privacy, and standing over their desks to listen to union conversations (*Id.* ¶ 87).

On July 13, 2022, an employee met with Mesa as union steward to discuss a potential violation of the collective bargaining agreement. (*Id.* ¶¶ 92-96.) As a result of that meeting, the employee filled out a "Grievant Statement Sheet" and turned that paperwork over to Moxley, who was not present at the meeting. (*Id.* ¶¶ 97-99.) Moxley incorrectly wrote the file date in the incident box as July 9, but—after meeting with Mesa—used Wite-Out to change the file date on the form to July 14. (*Id.* ¶¶ 100-03.) In August, USPS Labor Relations conducted a fact-finding investigation into the employee's grievance and placed Plaintiffs on emergency leave in September 2022 for allegedly falsifying the document to timely submit the employee's grievance. (*Id.* ¶¶ 105-08.) Plaintiffs assert their

suspensions were in retaliation for engaging in protected activity. (*Id.* ¶ 111.)

Moxley was suspended for approximately 3.5 months. (*Id.* ¶ 120.) Mesa was suspended for nearly five months, but he was awarded backpay and benefits after settling a grievance concerning the suspension. (*Id.* ¶¶ 114, 117.) Plaintiffs represent that as of the date of the filing of the FAC, Mesa has not received the backpay awarded. (*Id.* ¶ 118.)

### B. Procedural History

On February 8 and February 13, Moxley and Mesa, respectively, filed EEO Complaints of Discrimination. (Docs. 24-1, 24-3.) Both Plaintiffs filled out Box 16 which "explains the situation" as "See Attached" and provided a typed letter explaining the protected activities they were engaged in as well as the alleged retaliation and discrimination that resulted. (Doc. 24-1 at 2-3; Doc. 24-3 at 2, 5-6.) An EEO Dispute Resolution Specialist completed a report for both Plaintiffs and found their redress was not resolved. (Doc. 24-2 at 4; Doc. 24-4 at 4.)

Plaintiffs then filed their complaint with this Court, alleging retaliation and harassment in violation of Title VII of the Civil Rights Act ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Rehabilitation Act of 1973 (the "Rehabilitation Act"). (Doc. 5 ¶¶ 1-2, 127-32.)

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A court may dismiss a complaint "if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotations and citation omitted).

A complaint must assert sufficient factual allegations that, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is more than a mere possibility; a plaintiff is required to provide "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

## III.     DISCUSSION

Defendant moves to dismiss all of Plaintiffs' claims, arguing (1) Plaintiffs' ADA claims are not cognizable against USPS; (2) Plaintiffs failed to exhaust their harassment claims; and (3) Plaintiffs' retaliation claims fail as a matter of law. (Doc. 24 at 5-12.)

Before addressing each of these arguments, the Court notes that Plaintiffs do not properly allege their claims in separate counts, as required by Fed. R. Civ. P. 10(b). *See also Bautista v. L.A. Cnty.*, 216 F.3d 837, 840-41 (9th Cir. 2000) ("Courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation.") (citation omitted). But Defendant did not seek dismissal on this basis. The Court therefore construes the FAC liberally in assessing the motion to dismiss.

### A.     Claims Under the ADA

Plaintiffs allege that USPS harassed and retaliated against them for their protected activities in violation of the ADA, amongst other laws. (Doc. 5 ¶¶ 1, 128.) The ADA statutorily prevents discrimination by "covered entit[ies]," which includes "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. §§ 12111(2), 12112(a). Critically, however, the ADA exempts the United States from being considered an employer. *Id.* §§ 12111(5)(B)(i), 2000e(b). The Postal Service is an entity that is recognized as an "establishment of the executive branch." 39 U.S.C. § 201. As a result, Plaintiffs' retaliation claim does not arise under the ADA but arises "solely under the Rehabilitation Act." *Wise v. DeJoy*, 71 F.4th 744, 748 n.1 (10th Cir. 2023) (internal quotations and citation omitted).

Therefore, to the extent Plaintiffs assert harassment and retaliation under the ADA,

those claims will be dismissed without leave to amend, as any amendment would be futile. *Daniels v. Chertoff*, No. CV 06-2891-PHX-JAT, 2007 WL 1140401, at *2 (D. Ariz. Apr. 17, 2007) ("Under the ADA, the federal government is excluded from the definition of 'employer.' Based on this exclusion, federal courts have concluded that the ADA provides no remedy to federal employees.") (citation omitted).

### B. Failure to Exhaust Harassment Claims

Next, Defendant argues Plaintiffs' harassment claims should be dismissed because Plaintiffs have not exhausted their administrative remedies. (Doc. 24 at 6-7.)

A plaintiff must exhaust available administrative remedies before filing a claim under the Rehabilitation Act, Title VII, or the ADEA. *Kraus v. Presidio Tr. Facilities/Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009) (Title VII); *Whitman v. Mineta*, 541 F.3d 929, 932-33 (9th Cir. 2008) (ADEA); *Cherosky v. Henderson*, 330 F.3d 1243, 1245 (9th Cir. 2003) (Rehabilitation Act).[3] When the plaintiff is a federal employee, as is the case here, the employee must file a complaint with the EEO office. *Kraus*, 572 F.3d at 1043-44. The federal employee "must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter" and "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a); *see also Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001) ("[A] federal employee must notify an EEO counselor of discriminatory conduct within 45 days of the alleged conduct, and then, if the matter is not resolved, the employee may submit a formal administrative complaint.").

Generally, "[a]llegations in the civil complaint that fall outside of the scope of the administrative charge are barred for failure to exhaust." *Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001). A federal court may nonetheless consider the new allegations if they are "like or reasonably related to the allegations contained in the EEOC

---

[3] As it pertains to Plaintiffs' claims alleging violations of the ADEA, employees may choose to give the Equal Employment Opportunity Commission ("EEOC") notice of the discriminatory act or invoke the ADEA's administrative claim process through the EEOC. 29 U.S.C. §§ 633a(b)-(d); *Whitman*, 541 F.3d at 932. When an employee chooses to go through the administrative process, as Plaintiffs have here, they must notify the EEO Counselor within forty-five days of the alleged conduct. 29 C.F.R. § 1614.105(a)(1).

- 5 -

charge." *Green v. L.A. Cnty. Superintendent of Schs.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (quotations and citations omitted). To determine this, "the court inquires whether the original EEOC investigation would have encompassed the additional charges." *Id.* at 1476. Courts are to construe a plaintiff's EEOC charge "with the utmost liberality." *Paige v. California*, 102 F.3d 1035, 1041 (9th Cir. 1996) (quotations and citation omitted).

Plaintiffs factually allege that supervisors at USPS made comments and took certain actions which constituted harassment. (Doc. 5 ¶¶ 42, 44-45, 61-62, 71, 81-87.) But none of these allegations were presented in their EEO complaints; instead, Plaintiffs appended their EEO complaints with single-page letters discussing only retaliation and discrimination for engaging in activities "protected by Title VII and the Rehabilitation Act" and listed as "protected activities" the names of employees Plaintiffs had advocated for. (Doc. 24-1 at 3; Doc. 24-3 at 5-6.) The EEO complaints do not discuss statements made by supervisors, any actions which Plaintiffs construed as hostile, or even mention harassment. This is facially insufficient to exhaust a claim of harassment. Even when read "with the utmost liberality," the Court finds that the allegations in the EEO complaints are insufficient to appraise an EEOC investigator of the hostile and harassing nature which Plaintiffs now allege. *Paige*, 102 F.3d at 1041. Consequently, Plaintiffs' harassment claims will be dismissed for failure to exhaust.

Even assuming *arguendo*, that Plaintiffs' harassment claims were timely exhausted, the allegations in the FAC fall short of plausibly stating a claim for relief. A claim for workplace harassment is actionable to the extent the harassment creates a hostile work environment. To state a claim for hostile work environment, a plaintiff must allege that (1) Defendant "subjected her to verbal or physical conduct" because of her protected characteristic; (2) "the conduct was unwelcome;" and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008) (citation omitted).

The FAC discusses the various ways Plaintiffs' supervisors allegedly harassed *other*

employees Plaintiffs represented.[4] (*See* Doc. 5 ¶¶ 50, 52, 78.) Nowhere, however, does the FAC explain how *Plaintiffs* may have been harassed. Plaintiffs do not allege they themselves were harassed based on their age, race, sex, disability, or other protected characteristic, but rather seem to argue they were harassed by virtue of their status as union stewards. But these statutes do not provide protections based on union membership or stewardship status. *See* 42 U.S.C. § 2000e-2(a) (protected classes under Title VII include race, color, religion, sex, or national origin).

And even under the participation and opposition clauses of Title VII, the ADEA, and the Rehabilitation Act, Plaintiffs have not plausibly alleged they were subject to the severe or pervasive conditions courts have deemed sufficient to constitute an abusive working environment. *See Ray v. Henderson*, 217 F.3d 1234, 1245-46 (9th Cir. 2000) (evidence that the plaintiff "was targeted for verbal abuse related to those complaints for a period lasting over one and half years," "regularly yelled at," called a "liar," a "troublemaker," and a "rabble rouser," told to "shut up," and "subjected to a number of pranks, and was falsely accused of misconduct" was sufficient to preclude summary judgment for hostile work environment claim under anti-retaliation provision of Title VII). Therefore, dismissal of Plaintiffs' harassment claims is warranted on this basis as well.

### C. Retaliation Claims

And lastly, the Court addresses Defendant's argument that Plaintiffs' retaliation claims should be dismissed for failing to state a claim for relief. (Doc. 24 at 7-12.) Title VII, the ADEA, and the Rehabilitation Act prohibit employers from retaliating against their employees if the plaintiff-employee opposed an unlawful employment practice or participated in an investigation or proceeding relating to discrimination under each chapter. 42 U.S.C. § 2000e-3(a) (Title VII); 29 U.S.C. § 623(d) (ADEA); 29 U.S.C. § 794(d) (incorporating the ADA's anti-retaliation provision to the Rehabilitation Act).[5]

---

[4] Notably, all of these incidents were several months prior to November 1, 2022, when Plaintiffs first contacted the EEO office. (Doc. 24-2 at 2; Doc. 24-4 at 2.)
[5] *See also Barker v. Riverside Cnty. Off. of Educ.*, 584 F.3d 821, 825-26 (9th Cir. 2009) (explaining that Title VII's anti-retaliation provision has been incorporated into the Rehabilitation Act).

To establish a prima facie case of retaliation under Title VII, the plaintiff must plausibly allege: (1) that she was engaged in a protected activity; (2) that the employer subjected her to an adverse employment action; and (3) that a causal link exists between the protected activity and the employer's decision. *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 646 (9th Cir. 2003). The requirements are identical for retaliatory claims under either the Rehabilitation Act, *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004), or the ADEA, *Poland v. Chertoff*, 494 F.3d 1174, 1179-80 (9th Cir. 2007).

Defendant argues Plaintiffs' retaliation claims fail as a matter of law because (1) union activity is not considered a protected activity, and (2) Plaintiffs' allegations are insufficient to plausibly suggest Defendants' purported retaliation was causally connected to Plaintiffs' protected activity. (Doc. 24 at 9-12.)

### 1. Protected Activity

The first element of a retaliation claim is satisfied if the plaintiff has (1) opposed an unlawful employment practice or (2) participated in a proceeding under the relevant statute. *See* 42 U.S.C. § 2000e-3(a); *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004). "[T]he opposition clause, by its terms, protects only those employees who oppose what they reasonably perceive as discrimination *under the Act*." *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988). And participation in a proceeding triggers a claim for retaliation only when the underlying discrimination is "reasonably perceived" as discrimination prohibited by the relevant statute. *Id.*

Generally, "courts within the Ninth Circuit have held that union activity standing alone is not within the scope of Title VII's protected activity." *Delmore v. Wash. State Dep't of Corr.*, No. 3:21-CV-05625-TMC, 2025 WL 948918, at *22 (W.D. Wash. Mar. 28, 2025); *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1298 (N.D. Cal. 2020) (collecting cases); *Velarde v. DeJoy*, No. 3:23-CV-06008-DGE, 2024 WL 2399983, at *4 (W.D. Wash. May 23, 2024) (finding that the plaintiff's union activity, including her filing of several grievances, "cannot form the basis of a retaliation claim").

To the extent Plaintiffs' retaliation claim is based on their status as union stewards

and their participation in an employee's July 2022 grievance, such allegations fail to satisfy the protected activity element of a retaliation claim. That employee's grievance was related to a breach of the collective bargaining agreement—not discrimination under a federal statutory provision—and is therefore exclusively union activity, which is insufficient to form the basis of a retaliation claim. Several other courts are in accord with this principle. *Lee v. U.S. Postal Serv.*, 882 F. Supp. 589, 596-97 (E.D. Tex. 1995) (dismissing the plaintiff's retaliation claims where retaliation was based more so on participation in union activities than race). *Norwood v. Potter*, No. 06-0901-CV-W-GAF, 2008 WL 11337944, at *7 (W.D. Mo. Sept. 9, 2008), *aff'd*, 363 F. App'x 415 (8th Cir. 2010) ("Plaintiff did not engage in protected conduct by serving as a union steward. Title VII does not protect union activities.").

Plaintiffs, however, allege several other instances where they informally advocated, represented, opposed, or otherwise participated in proceedings involving charges of discrimination under each respective act.[6] (*See, e.g.*, Doc. 5 ¶¶ 32-37 (age and disability discrimination); ¶¶ 46-51 (sex discrimination); ¶¶ 56, 60 (racial discrimination) ¶¶ 63-65 (racial, disability, and nationality discrimination); ¶ 70 (age discrimination).) In the Ninth Circuit, "an employee's complaints about the treatment of others is considered a protected activity, even if the employee is not a member of the class that he claims suffered from discrimination." *Ray*, 217 F.3d at 1240 n.3. For example, in *Ray*, the Ninth Circuit reversed the district court's grant of summary judgment where the plaintiff—a man—alleged retaliation for complaining about management's treatment of female employees. *Id.* at 1237-38, 1246. And, although not disputed, part of the plaintiff's protected activities included meeting with the union shop steward, other employees, and management to address the alleged gender bias and harassment of his female coworkers. *Id.* at 1237-38, 1240 n.3 (noting that "filing a complaint with the EEOC" and "[m]aking an informal

---

[6] Defendant argues that informal advocacy does not constitute a protected activity. (Doc. 24 at 10.) But Defendant does not point to, nor can the Court locate, Ninth Circuit authority holding as much. Indeed, the Ninth Circuit's dicta in *Ray* seems to refute this very principle. 214 F.3d at 1240 n.3 (noting that an informal complaint to a supervisor qualifies as a protected activity).

complaint to a supervisor" are protected activities).

Therefore, to the extent Plaintiffs' suspensions were in retaliation for participating in proceedings or opposing the alleged discrimination of their co-workers under each respective statute, such allegations are sufficient to satisfy the "protected activity" element.

### 2. Causation

As to Plaintiffs' purported actions that qualify as "protected," Defendant argues their claims for retaliation nonetheless fail because Plaintiffs have not plausibly alleged a causal connection between those activities and their suspensions. (Doc. 24 at 10-12.)

At the pleading stage, a plaintiff need only plausibly allege a causal link between the alleged protected activity and the retaliatory action. "The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011) (citation omitted); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) (explaining that "causation may be established based on the timing of the relevant actions").

Defendant argues that Plaintiffs' alleged protected activities are too remote in time to plausibly allege causation. (Doc. 24 at 10-12.) Generally, an adverse employment action must occur "fairly soon after the employee's protected expression." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (quotations and citation omitted). The Ninth Circuit, however, has not adopted a bright-line rule. In some cases, "time ranging from 42 days up to three months has been found sufficient to establish temporal proximity." *Pratt v. Haw., Dep't of Pub. Safety*, 308 F. Supp. 3d 1131, 1147 (D. Haw. 2018) (citing cases). And yet, other courts have found a lapse of three to five months too remote to support an inference of causation. *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month lapse too long); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month lapse too long) ); *Brown v. Dep't of Pub. Safety*, 446 F. App'x 70, 73 (9th Cir. 2011) (holding that without more, a 5-month gap between actions was insufficient to infer causation).

Plaintiffs' alleged retaliatory suspensions occurred on September 26 and 27, 2022. (Doc. 5 ¶¶ 105, 114.) Plaintiffs assert the adverse action was the result of their opposition to discriminatory practices and participation in EEO proceedings occurring from as early as mid-2021 through July 2022. (*Id.* ¶¶ 32, 63, 66, 73, 77, 78.) Plaintiffs allege their supervisors were aware of their participation in various EEO charges. (*Id.* ¶¶ 28-30, 54-56, 63-64) Indeed, most of Plaintiffs' protected activities were directed to their supervisors and managers. (*Id.* ¶¶ 36-37, 46, 48-49, 51, 56, 60-62, 66-70, 74-81.) While some of Plaintiffs' actions may be too remote in time to support causation (*See id.* ¶¶ 32-37 (March 2022 opposition to age and disability discrimination), ¶¶ 24-25, 63-64 (February and April 2022 opposition to race and disability discrimination)), other protected activities occurred merely two months before Plaintiffs' suspensions (*Id.* ¶¶ 66-67, 73-76 (July 2022 opposition to disability discrimination), ¶¶ 46-50, 78-79 (July 2022 opposition to sex discrimination), ¶¶ 70, 77 (July 2022 opposition to age and disability discrimination)). Accepting these allegations as true, Plaintiffs sufficiently allege a causal connection between their protected activities and the alleged retaliatory action to overcome Defendant's Rule 12(b)(6) challenge.

Defendant also argues that "[a]ny causal connection that may have existed was severed when Plaintiffs independently, and voluntarily, altered a key date on Brown's Grievant Form." (Doc. 24 at 11.) According to Defendant, Plaintiffs' acts were a superseding force that broke any chain of causation between their alleged protected activities and the retaliatory suspensions. (*Id.*) Further, Defendant asserts that because the suspensions were the result of a fact-finding investigation conducted by an independent body, the alleged retaliatory animus of Plaintiffs' supervisors cannot be imputed to USPS. (*Id.* at 11-12.)

Defendant could, very well, be correct in its assertions. But such a determination requires an evaluation of evidence that is not currently before the Court. Because Defendant's arguments as to causation are premature, and Plaintiffs sufficiently allege a causal link at this juncture, the Court will deny Defendant's motion to dismiss on this basis.

### D. Motion to Strike

The Court will now turn to Defendant's Motion to Strike Plaintiffs' Sur-Reply. (Doc. 38.) Under the local rules, a party may move "to strike any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order." LRCiv 7.2(m)(1); *see also* Fed. R. Civ. P. 12(f). Sur replies are "generally discouraged" and only allowed "in the most extraordinary of circumstances." *Mexicanos v. Diamondback Shooting Sports, Inc.*, No. CIV 22-472-TUC-CKJ, 2023 WL 4237495, at *1 (D. Ariz. June 28, 2023) (citing *Briggs v. Montgomery*, No. CV-18-02684-PHX-EJM, 2019 WL 13039282, at *2 (D. Ariz. Mar. 19, 2019)). Plaintiffs' sur-reply is "not provided for in the local rules of practice for this District" or the Federal Rules of Civil Procedure and is "only permitted with express leave of the Court." *Id.* Plaintiffs did not seek the Court's leave; therefore, the sur-reply is improper. The Court will grant Defendant's Motion to Strike. (Doc. 38.)

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (Doc. 24) is granted in part and denied in part as provided herein.

**IT IS FURTHER ORDERED** that Defendant must respond to Plaintiffs' First Amended Complaint (Doc. 5) within fourteen days of the date of this Order.

**IT IS FURTHER ORDERED** that Defendant's motion to strike (Doc. 38) is granted, and Plaintiffs' sur-reply (Doc. 37) is stricken.

**IT IS FINALLY ORDERED** that a Rule 16 Scheduling Conference will be set by separate order.

Dated this 29th day of April, 2025.

Michael T. Liburdi
United States District Judge